King, J.,
delivered tbe opinion of tbe court.
Appellee (hereinafter referred to as tbe company) brought its action in the district court to *257 recover from appellant (hereinafter referred to as the hank) a snm of money which, in the complaint, the company alleges the hank had collected for it oh account of certain renewal premium receipts and notes sent to the hank by the company for collection, and failed to remit or account for. The record shows with reasonable certainty that the money, which the company alleges that the bank had collected and failed or neglected to remit or account for, was in fact collected and retained by one Bud-long. The right of the controversy depends upon the legal status of the said Budlong, whether in collecting the money he should be regarded as the agent of the bank, as the company contends, or the agent df the company, as the bank contends.
1. The case, after its first trial in the district court, was reviewed and decided by the conrt of appeals, January, 1905, and in the opinion then handed down a more extended and complete statement of the case than we now deem necessary will be found. —Manhattan Life Insurance Company v. First National Bank, 20 Colo. App. 529. The evidence on the first trial in the district court does not materially or essentially differ from that at the last trial, and the judgment announced by the former conrt of appeals could not have been reached without having-decided, expressly or by implication, most if not' all of the questions presented for consideration on this appeal. That decision, therefore, has become the law of the case, and all matters therein clearly decided are res judicata, and will be so considered by this conrt in the further discussion of the case.
2. There is no material conflict in the evidence as to the facts, the apparent conflict arising from *258 the conclusions of law drawn by the witnesses and testified to as facts. The relation of Budlong to the parties plaintiff and defendant must be determined from, certain letters.that passed between the company and the bank, and the company and Budlong, his acts which came to the knowledge of the parties, and the conduct of the parties themselves. Portions of those letters are hereinafter set out, the italics being our own.
September 24th, 1897, the company sent to the bank for collection certain items, with the following letter:
“Enclosed please find for collection the following October renewals, viz.: Total, $1,054.46.
Mr. E. C. Budlong, Jr., our agent in Denver, will call on you and give you the addresses of the parties and other information you may require.
All collections on account of these items and any other items that may be sent to you are to be credited to the account of -the' Manhattan Life Insurance Company and statement of the account is to he made to us monthly on the first of each month. Drafts on the accounts will he signed hy three officers of the company whose signatures are attached. Items not paid when due may be held thirty days and payment accepted during that time provided the parties furnish a certificate of good health, blanks. for which we enclose. When thirty days passed due all unpaid items should he returned to us. ’ ’
Receipt of this letter with the items enclosed was formally acknowledged by the bank, and in addition thereto the bank, by Mr. Ross Lewin, its cashier, wrote a letter asking concessions as to fees *259 for collections made. This letter came into the hands of the vice-president of the company who made the notation thereon, “Turn over to some other bank J. L. H., Y. P.”, and that letter with such notation was sent to Budlong, together with a letter from the company, signed by its secretary, both of which letters were exhibited by Budlong to the bank, the letters (with the notation aforesaid) being as follows:
(Bank to Company)
“Denver, Colo., September 28, 1897.
Eeplying to yours of the 24th, with enclosures, we beg to advise you that we have acknowledged receipt of same under separate cover.
We shall be very glad to handle not only your collections, but any other business you may entrust to us, but at the same time we are of the opinion that we should receive a just collection-fee.
We handle a great deal of this business for various insurance companies throughout the country and in all cases receive at least two per cent, on the ■ total of collections made.
Kindly advise us whether you are willing to make us that concession, and oblige.”
{NOTATION) “Turn over to some other bank J. L. H., Y. P.”
(Company to Budlong)
“October Eleventh, 97.
We have your favor of the 7th inst. with check for $100, and herewith return your note for like amount. In regard to the other notes toe would-say that toe prefer to collect them through the bank.
We have a letter from the First National Bank in which they say they think they should have 2 *260 per cent, for collecting the renewals. This we cannot afford to pay, and if the bank will not make these collections at their regular rate for collecting, please see what you can do with some other hank and report to us, when if satisfactory, ioe will change the account
No further correspondence passed between the bank and the company except letters transmitting other notes and receipts for collection, which the company continued to send, and acknowledgments from the bank upon receipt of such items, until the company discovered the conditions which led to this litigation, to which reference will be made later.
November 20th Budlong wrote the insurance company as follows:
“Denver, Colo., Nov. 20, 1897.
Mr. J. L. Halsey, Y. P.,
New York City.
My dear sir:
I have been endeavoring for several weeks to make arrangements with some one of the banks to handle our collections at a reasonable rate. I have had several good propositions but found that upon pressing matters at the First National a better arrangement could be made there than anywhere else, which I know will be more satisfactory to you as well as myself.
With the understanding that all notices are to he sent from this office and that no expense or trouble will he given the hank in the matter, they have com sented to handle the account without charge other than the regular Clearing House charge of one-tenth of one per cent for remittances in New York exchange.
*261 Under these circumstances and considéring the fact that I have personally seen every policy holder who has paid a premium during the last thirty days, in addition to the expense of postage, etc., I trust you will have no objection to continue paying me 2 per cent upon these items. If necessary I will of course stand the exchange charge.

It seems to me it ivould be wise to send me a notice of every item or note sent to the bank in order that I may duly notify the parties. * * *

Trusting that all of the above matters will be satisfactory, I remain,
Yours respectfully,
Edwin Budlong, Jr.”
On the 24th of September the company had written to Budlong” notifying him that it had sent October renewals to the' bank, in the following language :
“We have today forwarded the October renewals to the First National Bank for collection with instruction to place the amount to our. credit and to*pay only by draft upon this office. Please call on them and give them any assistance in your power.”
All items sent to the bank after the letter of September 24th were acknowledged by the bank as having been received by it for collection.
• Before any of the correspondence hereinbefore stated had passed, Budlong had been the agent in Denver of the company, his power to collect being limited to first premiums on policies and such other matters as might be sent to him by the company for collection. Being in arrears on account of moneys received by him, Budlong was called to New York *262 by tbe company, and his agency restricted -and limited by taking from him the right to collect, and requiring him to turn over to the First National Bank for collection all items in his hands. Upon his return to Denver he delivered items to the bank amounting to something over $700, taking and forwarding to the company the following receipt: “Denver, Colo., Sept. 27, 1897.
Received from Mr. Edwin C. Budlong, Jr., General Agent, the following renewal receipts to be held for collection and credited to the account of the Manhattan Life Insurance Company of New York, subject to their draft only upon the signatures of the proper, officers of the company to be filed with the bank.
(List of items)
THE FIRST NATIONAL BANK OF DENVER, Per Hatjghwout, Teller.”
» At the same time he deposited in the bank to the credit of the company, subject to its draft only, funds then in his possession, which it seems he had theretofore carried in said bank in the name of the company but subject to his own check.
From the foregoing correspondence and the acts of the parties it would seem established beyond any room for difference of opinion that the bank was advised that the company had withdrawn from Budlong its confidence to the extent that it restricted his agency (a) by taking from him the right to collect and transferring that right and obligation, to the bank, and (b) by taking from Budlong, and placing in the possession of the bank, those receipts and notes without which Budlong would have been unable to make collection, (e) and thereby also tak *263 ing from its former agent Ms apparent as well as real authority to collect. This restriction as to Bud-long’s authority was not removed, nor was the bank’s duty and obligation to make the collections or return the items to the company in any manner modified by act of the company, except to the extent that it permitted Budlong, under his personal arrangement with the bank, to send notices to the policy holders, hut in no manner authorized delivery to Budlong of the receipts or notes.
It appears from the evidence that for a time the hank permitted Budlong to withdraw the renewal receipts and notes for the purpose of presenting and collecting them, upon his giving to the baMc his check upon another bank for the amount of the items withdrawn. Later, this was not required, and the items were withdrawn by him without either giving check or receipt, until the account became so confused that the bank was unable to make report to the company of the disposition of the items so sent to it for collection. Early in 1898 the company began to demand statement of its account from the hank, but apparently received none. Telegrams were sent, other demands were made, and on July 22nd the hank, by its cashier, wrote the following letter:
.“The Manhattan Life Insurance Co.,
New York.
Gentlemen:
We are in receipt of your telegram of today, and have wired you that the statement was mailed you on the 20th. On investigation I find that your agent here had requested our bookkeeper, 'who was a friend of his, that should he receive a request *264 for a statement from you, to kindly notify the agent and hold the statement for a day or two to enable him to collect some additional funds.
This was done without authority from this office for which we sincerely apologize, and assure you it will not occur again.”
Further telegraphic requests for reports were made, and on August 3rd, the bank, through its' cashier, again wrote as follows:
“H. Y. Wemple, Esq., 2nd Vice Pres.,
Manhattan Life Insurance Co.,
New Yo.rk City.
Dear sir:
I am in receipt of your telegram of today and again have to apologize for the apparent carelessness on our part.
On investigation I find that the bookkeeper who had charge of your account has been away on his vacation, and that this was the reason the statement was held. As I wired you this morning the manner in which we kept your account is by names instead of by numbers of policies, and therefore it is impossible for us to check with the report which you sent us, but if you will send us one on which the names of the policy holders appears, we will immediately check it up and return it to you.
In this connection I beg to say that I find, much. to my surprise, that your agent, Mr. Budlong, seems to have been able to get an influence over all our clerks with whom he has done business. His plan has been that he would come to this bank and give us his own check on the Western Bank for certain of your premium notices with a deposit slip depositing the amount to the credit of the company, *265 and take the slip away with him; that is to say, none of your policy holders make payments direct to us, but all through Mr. Budlong. This may be your desire, and if it is, it is all right. I simply tvant to inform you how the business is done.”
The surprise and dissatisfaction expressed by the cashier seems’ to be fully justified by the evidence as to the manner in' which the business was conducted between the subordinate employes of the bank and Mr. Budlong, in view of the instructions received by the bank. The answer of the company to the foregoing letter expresses its understanding of the agency of Budlong, as follows:
“* * * Mr. Budlong,- to whom- you refer, is our agent only for the purpose of soliciting, delivering, etc., neiv policies. We placed the business of making collections of our renewal premiums in the hands of your bank for the especial reason that we had no suitable person in that locality whom we desired to use for that purpose. The understanding with you as to these collections seems to be unmistakably set out in our letter to your bank of Sept. 24, 1897, and your answer of Sept. 28, 1897.”
Upon the condition as shown by the foregoing correspondence and other evidence in the case, the court of appeals in the decision referred to, held that Budlong was not the agent of the company and was not clothed with apparent authority to make arrangements with the bank to withdraw the items for collection, and that there was no ratification by the company of the acts of Budlong in taking the items from the bank and making the collections, nor of the bank in permitting him to take the same, and *266 in that respect we are concluded by the said decision, but nevertheless, will express our approval of such finding upon the merits. Counsel for the bank, however, contends that the court of appeals did not expressly decide that Budlong was the agent of the bank, and that the evidence does not warrant the finding that the bank intended to make him its agent, or did in fact authorize him to act in its behalf in taking the items from the bank and making the collections, and therefore, is not bound to answer to the company for his default in the matter of the collections actually made and not paid to the company either by Budlong or the bank. In that connection, however, the former court of appeals used the following language: “The bank having undertaken to act as the agent of the company in making the collections, failed to exercise such care in ascertaining the scope and extent of Budlong’s authority in the premises, which it might have done by the exercise of ordinary care, as made it liable, under the authorities, to the company for the loss sustained.” Whether this constituted a determination by the court that Budlong, in making the collections, acted as the agent of the bank, or that by its conduct the bank was estopped from denying the agency of Budlong, or chargeable with liability upon some other ground or principle of law, it is clear that the court did decide, upon evidence essentially the same as that now before this court, that the bank was liable to the company. Furthermore, it appears to us that, the authority of Budlong and the scope of his agency for the company being so clearly defined and limited in the letter sending the items to the bank for collection, when the bank vol *267 untarily delivered to Bndlong the items which the company had refused to send him, but sent to the bank with explicit instruction to collect or return, it thereby constituted him its agent for collection and cannot deny its liability for his acts.
The foregoing statement of our views of the relations between the bank and Budlong disposes also, adversely to the bank, of the question raised by its counsel that plaintiff’s complaint, being in form ex contractu, is not sufficient to permit recovery under the facts disclosed. Other matters discussed in the dissenting opinion were considered and decided on the former appeal.
While we think the case might properly have been summarily disposed of by affirming the judgment upon the authority of the former opinion, yet, in view of the vigorous, able and persuasive argument of counsel for the bank, and the lack of entire unanimity of the court as to the propriety of recognizing “the law of the case” as controlling, we have also considered the case and expressed our views on the merits.
The judgment is affirmed.
Scott, P. J., and Hurlbut, J., concur.
Walling, J., concurs specially.
Cunningham, J., dissents.