No. 89-220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

———————————

JEANETTE SLOAN, as conservator of the
Estate of John P. Sloan,

        Plaintiff and Respondent,

-vs-

RICHARD FAUQUE AND TED ZENZIUS,

        Defendants and Appellants.

———————————

APPEAL FROM: District Court of the Ninth Judicial District,
              In and for the County of Glacier,
              The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Stephen C. Berg; Warden, Christiansen, Johnson & Berg,
        Kalispell, Montana

    For Respondent:

        Stephen D. Roberts, Bozeman, Montana

———————————

Submitted on Briefs: Aug. 24, 1989

Decided: October 17, 1989

_____
              Clerk

FILED: Filed:
'89 OCT 17 AM 11 35
ED SMITH, CLERK
MONTANA SUPREME COURT

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Richard Fauque and Ted Zenzius, defendants and appellants, appeal from a partial summary judgment entered in favor of plaintiff and respondent, Jeanette Sloan, as conservator of the estate of John P. Sloan, by the District Court of the Ninth Judicial District, Glacier County. We affirm and remand for proceedings pending before the District Court.

The sole question raised on appeal is whether the District Court properly granted a partial summary judgment pursuant to Rule 56(a), M.R.Civ.P., in favor of respondent on the issue of liability.

The facts of the case are undisputed. On April 5, 1987, Zenzius attended a "kegger" party in Shelby, Montana. Among the guests were Will Newberry, Mark Barnes, and Glen Gorman. Later that evening, the party moved to the Newberry home in Cut Bank. Zenzius transported the keg from the Shelby residence to the Cut Bank residence in his vehicle. The keg was taken into the Newberry home where it was made available for consumption. The party-goers proceeded to drink the contents of the keg.

On that same evening, Fauque, who was walking home from work, was approached by Barnes, who asked Fauque if he wanted to drink some beer. Fauque responded in the affirmative and the pair proceeded to the Newberry residence in the Barnes vehicle, where Fauque did in fact consume the beverage.

Shortly thereafter, some Shelby kids arrived at the party and wanted to take the keg. An argument ensued over the matter between Barnes, Gorman, and the Shelby kids. The Shelby kids took the keg and left the party in a vehicle

driven by Jeffrey Hodges (the Shelby vehicle). As the vehicle departed, Gorman and Barnes yelled and screamed at the vehicle's occupants.

Gorman returned to the Newberry residence and informed everyone that the Shelby kids had called them a derogatory name. He then encouraged the people in the house to go with him to "beat up" the Shelby kids. Fauque and Zenzius were present at that time.

Fauque and Zenzius voluntarily joined Gorman, Barnes, and Newberry in Barnes's vehicle to pursue the Shelby vehicle. Zenzius later stated that he assumed that "we were going to get in a fight" when the group got into the vehicle and that the group was the type who would get into such a fight. Both Fauque and Zenzius were aware of the violent reputation of Gorman.

As Barnes was backing his vehicle out of the driveway, it became stuck on a fence. Fauque assisted Barnes in freeing the vehicle by stepping on the fence. Approximately five minutes had lapsed since the departure of the Shelby vehicle. Both Fauque and Zenius were aware that the Barnes vehicle would have to speed to catch up to the Shelby vehicle. The Barnes vehicle did in fact travel 80-90 miles per hour on U.S. Highway 2 from Cut Bank to Shelby in pursuit of the Shelby vehicle.

The Barnes vehicle did catch up with the Shelby vehicle, at which time the two vehicles passed each other back and forth. Gorman leaned out the back window of the driver's side of the Barnes vehicle and yelled at the kids in the Shelby vehicle. He then leaned out the window and opened the door of the Shelby vehicle. He also threw a piece of rubber at the vehicle. At no time did either Fauque nor Zenzius say anything to anyone about slowing down or abandoning the chase. As a consequence of the chase, a collision occurred

between the two vehicles which resulted in serious and disabling injuries to John Sloan, a passenger in the Shelby vehicle.

The sole question raised on appeal is whether the District Court properly granted a partial summary judgment pursuant to Rule 56(a), M.R.Civ.P., in favor of respondent on the issue of liability.

A party moving for summary judgment must prove that he is entitled to summary judgment as a matter of law by demonstrating an absence of any genuine issue of material fact. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509. As noted, the facts of the case are not in dispute. The appeal centers around whether Fauque and Zenzius are liable as tortfeasors acting in concert--a question of law.

Fauque and Zenzius argue that their involvement in the action does not constitute a tort since they were not driving the vehicle involved in the accident but were merely passengers in the vehicle. The District Court, however, found that defendants did indeed act in concert as tortfeasors as defined in part in Restatement (Second) of Torts § 876 (1979) as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

While the issue raised is one of first impression in Montana, several other jurisdictions have determined that where two or more persons commit tortious acts in concert, all are liable for the tortious acts of anyone. Huckeby v. Spangler (Tenn. 1975), 521 S.W.2d 568. See also Herman v.

Westgate (N.Y. App. Div. 1983), 94 A.D.2d 938, 464 N.Y.S.2d 315 (equal liability found where defendant participated in the concerted activity of throwing stag party guests from a barge); American Family Mutual Ins. Co. v. Grim (Kan. 1968), 440 P.2d 621 (joint and several liability found where defendant aided, abetted, and encouraged breaking into a church at night to steal sodas and, unknown to the defendant, his two friends lit torches to light the darkened church, which subsequently caused a fire therein).

Defendants argue that because they were not in control of the Barnes vehicle and did not make any encouraging statements to the driver, they should not be held liable for the resulting accident. We disagree. In Schiller v. Strangis (D. Mass. 1982), 540 F.Supp. 605, the court held that where the defendant knowingly joined in committing a tort and by his silence encouraged the tort, he was liable. The same holds true in the present case. Fauque and Zenzius voluntarily joined the group in the Barnes vehicle. They knew the vehicle would have to speed to catch up with the Shelby vehicle. They also knew that the purpose of the chase was to eventually assault the occupants of the vehicle. The silence of the defendants during the chase does not negate their involvement nor excuse their liability.

Further, Fauque and Zenzius acted affirmatively in the joint tortious plan to chase after the Shelby vehicle and assault its occupants. Both men responded to Gorman's statement that they should "beat up" the Shelby kids by voluntarily joining the group in the Barnes vehicle for the common purpose of committing an intended assault; Fauque substantially assisted in freeing the Barnes vehicle from a fence in order for the chase to commence; and both defendants remained silent during the chase and did not make any demands of abandoning the chase nor slowing the vehicle to anyone

- 5 -

therein. Fauque and Zenzius encouraged Barnes's actions and gave him substantial assistance, thus, acting in concert with the occupants of the Barnes vehicle and are subject to liability. Summary judgment was proper.

Affirmed and remanded for proceedings pending before the District Court.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices