William C. HOLMES, Plaintiff–Appellant,

v.

Richard E. YOUNG, Defendant–Appellee.

No. 93CA0129.

Colorado Court of Appeals,
Div. IV.

June 16, 1994.

Rehearing Denied July 14, 1994.

Certiorari Denied Dec. 19, 1994.

William E. Brayshaw, Denver, for plaintiff-appellant.

Wood, Ris & Hames, P.C., F. Michael Ludwig, Mary E. Kanan, Denver, for defendant-appellee.

Opinion by Judge DAVIDSON.

In this action to recover partnership assets, plaintiff, William C. Holmes, appeals from the judgment entered in favor of defendant, Richard E. Young. We affirm.

Plaintiff was a limited partner in South of Second Associates (South of Second), a Colorado limited partnership formed in 1972. Ketchum. Konkel. Barrett. Nickel. Austin, Inc. (KKBNA), was the general partner; in addition to plaintiff, Richard W. and Robert E. Eckels were the limited partners. South of Second was to engage in the business of developing or disposing of real property which it acquired.

South of Second acquired a parcel of real property located in Georgetown, Colorado. Georgetown resisted development of the property because of its location on a site considered to be of historical value and refused to issue the building permit necessary for the development planned by South of Second.

Litigation on behalf of South of Second was protracted, but eventually resulted in a Colorado Supreme Court ruling requiring the issuance of the building permit. *See South of Second Associates v. Georgetown*, 199 Colo. 394, 609 P.2d 125 (1980); *South of Second Associates v. Georgetown*, 196 Colo. 89, 580 P.2d 807 (1978). Defendant, an attorney, took over representation of South of Second early in the litigation process and agreed to defer collection of fees until the action concluded.

No significant amount of construction was ever completed on the development. Negotiations between Georgetown and KKBNA culminated in an agreement under which Georgetown would pay South of Second $250,000 as monetary damages, payable over a period of 15 years, and the Georgetown Historical Society (Historical Society) would purchase the property for $100,000, payable over a period of 5 years.

Defendant established a checking account in the name of South of Second in which to deposit the sale proceeds and the damage settlement. Defendant, the sole signatory on the account, wrote checks from the account at the direction of KKBNA.

Plaintiff was displeased with the settlement arrangements, and a dispute arose over the distribution of the sale proceeds and damages. Plaintiff brought suit against South of Second, KKBNA, and Georgetown, seeking, *inter alia*, dissolution of South of Second and an accounting. Defendant represented South of Second and KKBNA. Plaintiff was represented by his own attorney.

In 1983, plaintiff agreed to settle the suit pursuant to a stipulation which provided for payment to plaintiff of a portion of the sale proceeds and damages paid either to South of Second or to KKBNA on a specified schedule over a period of 15 years. Under this agreement, should the schedule of payments by Georgetown or the Historical Society change, South of Second and KKBNA would nonetheless be required to make payments to plaintiff pursuant to the schedule.

In 1985, Georgetown and the Historical Society prepaid the outstanding balance due. At the direction of an officer of KKBNA, defendant delivered the funds remaining in the South of Second account to KKBNA and the account was closed.

South of Second filed its final tax return for the tax year 1986. Defendant's involvement with any South of Second monies ended at that time.

Payments were made to plaintiff in a timely manner in 1985 and 1986. In 1987, plaintiff and KKBNA negotiated a change in the payment schedule from yearly to monthly payments. In 1988, KKBNA ceased making the required payments.

Plaintiff filed this action against South of Second and KKBNA, alleging breach of fiduciary duty and breach of contract, and against defendant for aiding and abetting a breach of fiduciary duty. Except for the filing of tax returns, South of Second had ceased operations after settling the litigation with Georgetown and arranging for the collection of the sale proceeds and damages. KKBNA ceased operations in August 1988 and has no assets.

After a bench trial, judgment was entered in favor of defendant. KKBNA had entered no appearance during the litigation and had previously been found in default. Plaintiff then submitted a combined motion for a new trial and to alter and amend the judgment to include a default judgment against KKBNA. The trial court denied the motion for new trial and granted the motion to alter and amend judgment. The trial court then entered supplemental findings of fact, conclusion of law, and default judgment in favor of plaintiff and against KKBNA on both theories of contract and fiduciary duty liability. KKBNA is not a party to this appeal.

## I.

Plaintiff first argues that the trial court erred in finding that defendant did not aid and abet KKBNA in the commission of a breach of its fiduciary duty to plaintiff. We disagree.

## A.

According to Restatement (Second) of Torts § 876(b) (1977): "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *See Sloan v. Fauque,* 239 Mont. 383, 784 P.2d 895 (1989) (aiding and abetting reckless driving resulting in collision); *Rael*

*v. Cadena,* 93 N.M. 684, 604 P.2d 822 (N.M.App.1979) (aiding and abetting a battery); *Russell v. Marboro Books,* 18 Misc.2d 166, 183 N.Y.S.2d 8 (N.Y.Sup.Ct.1959) (aiding and abetting defamation); *Keel v. Hainline,* 331 P.2d 397 (Okl.1958) (aiding and abetting a battery).

■ Liability for aiding or abetting a tortious act will be found if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation. *Halberstam v. Welch,* 705 F.2d 472 (D.C.Cir.1983); *see also Cobb v. Indian Springs, Inc.,* 258 Ark. 9, 522 S.W.2d 383 (1975) (under facts presented, jury could have found that encouragement to drive recklessly involved foreseeable risk of harm at the time of encouragement).

The specific tort alleged by plaintiff here is aiding and abetting a breach of fiduciary duty. A number of federal and state courts have recognized a cause of action under the theory of aiding and abetting breach of fiduciary duty and have adopted the Restatement position for guidance. *See Blow v. Shaughnessy,* 88 N.C.App. 484, 364 S.E.2d 444 (1988).

Although no Colorado court has previously adopted Restatement § 876, Colorado courts have recognized the Restatement (Second) of Torts § 874 (1977) definition of the tort of breach of fiduciary duty. *See Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993); *Destefano v. Grabrian,* 763 P.2d 275 (Colo. 1988); *Rubenstein v. South Denver National Bank,* 762 P.2d 755 (Colo.App.1988). And, according to Restatement (Second) of Torts § 874 comment c (1977): "A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused. (See § 876)."

■ In jurisdictions which have recognized the tort of aiding and abetting a breach of fiduciary duty, the plaintiff must prove each of the following elements: "(1) breach by a fiduciary of a duty owed to plaintiff, (2)

defendant's knowing participation in the breach, and (3) damages." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 281–82 (2d Cir.1992); *see also Terrydale Liquidating Trust v. Barness,* 611 F.Supp. 1006 (S.D.N.Y.1984). The gravamen of a claim of aiding and abetting a breach of fiduciary duty is the defendant's "knowing participation" in the fiduciary's breach of trust; wrongful intent is not necessary as the factfinder is required only to "find that the [defendant] knew of the breach of duty and participated in it." *S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 848 (2d Cir.1987).

 A general partner owes a fiduciary duty to a limited partner not to misappropriate partnership assets, and this fiduciary duty continues past the dissolution of a partnership through the winding up period until the division of partnership assets is complete. *See Steeby v. Fial,* 765 P.2d 1081 (Colo.App. 1988); *Gundelach v. Gollehon,* 42 Colo.App. 437, 598 P.2d 521 (1979). We perceive no reason why the tort of aiding and abetting a breach of fiduciary duty should not be recognized in a limited partnership situation.

### B.

As we have stated, a partnership generally passes through a three-step dismantling process: dissolution, winding up, and termination, *Tucker v. Ellbogen,* 793 P.2d 592 (Colo.App.1989), and the fiduciary duty which partners owe to each other continues through the winding up phase until partnership assets have been divided and partnership liabilities satisfied. *Steeby v. Fial, supra.*

In its findings of fact and conclusions of law entered after trial, the trial court concluded that the partnership had terminated at the time the 1983 stipulation was executed and that no mutual fiduciary duties existed between plaintiff and KKBNA after that time. The trial court further concluded that the assets were effectively divided by the execution of the stipulation and the rights and obligations of the former partners were defined by that document.

However, in its supplemental findings of fact and conclusions of law, the trial court found that KKBNA had committed a willful breach of fiduciary duty by taking the funds from the South of Second account and using them for non-partnership purposes in violation of the terms of the stipulation, and by not informing plaintiff that the funds had been distributed to it. We recognize that this finding is inconsistent with the trial court's earlier explicit finding that no mutual fiduciary duties existed between plaintiff and KKBNA after the stipulation was executed in 1983.

Ordinarily, a material discrepancy of this nature would, at minimum, require a remand of the case to the trial court for clarification of the findings of fact. Under the circumstances present here, however, we conclude that a remand is not necessary.

Initially, we note that the trial court's original finding that no fiduciary duties between the parties existed after 1983 is consistent with its conclusion that the partnership terminated at that time. Thus, a simple explanation for the discrepancy could be that it is an unintended result of the nature of the judgment against KKBNA. *See Bettcher v. State ex rel. Colorado General Hospital,* 140 Colo. 428, 344 P.2d 969 (1959) (In a default judgment, the allegations of the plaintiff's complaint are accepted as true.).

 In any event, whether or not the trial court actually intended to alter its findings does not affect our resolution of the issues raised on appeal. This is because, even if KKBNA did owe a continuing fiduciary duty to plaintiff, the trial court found as fact that defendant did not knowingly assist it in a breach of that duty.

Specifically, the trial court found that defendant could not have known that KKBNA would fail in its obligations, whether based upon partnership principles or contract principles, to pay plaintiff pursuant to the schedule provided for in the stipulation. These findings and conclusions are supported by adequate evidence in the record. *See Hooper v. Yoder,* 737 P.2d 852 (Colo.1987).

"The relevant 'knowledge' for liability to attach for knowingly participating in a fiduciary's breach of duty is knowledge as to the primary violator's status as a fiduciary and knowledge that the primary's conduct contra-

venes a fiduciary duty." *Diduck v. Kaszycki & Sons Contractors, Inc., supra,* 974 F.2d at 282–83.

There is a divergence of authority as to whether actual knowledge is required or whether constructive knowledge of the breach will suffice. *Compare Terrydale Liquidating Trust v. Barness, supra* (actual knowledge was required under the circumstances present) *with Diduck v. Kaszycki & Sons Contractors, Inc., supra* (defendant was "on notice" that the breach may have been occurring and therefore a duty to investigate was triggered). We need not resolve this question, however, as we conclude that the record supports the trial court's findings that defendant could not have known, or even have been "on notice" at the time the funds were transferred to KKBNA, either that KKBNA's request to transfer the funds was improper, or that KKBNA would breach the duty to pay plaintiff in 1988.

According to the record, KKBNA, as the sole general partner, was the only entity ever authorized to act for South of Second. *See Black v. First Federal Savings & Loan Ass'n,* 830 P.2d 1103 (Colo.App.1992), *aff'd sub nom. La Plata Medical Center Associates, Ltd. v. United Bank,* 857 P.2d 410 (Colo.1993); *Silvola v. Rowlett,* 129 Colo. 522, 272 P.2d 287 (1954); §§ 7–60–109, 7–61–108, and 7–61–110, C.R.S. (1986 Repl.Vol. 3A).

Defendant issued all checks from the South of Second account at the sole direction of KKBNA. And, the stipulation specifically provided that the sale proceeds and damages from Georgetown or the Historical Society could be paid to KKBNA as well as to South of Second.

The record also shows that, at the time the last of the sale proceeds and damages were collected, defendant assumed that KKBNA was closing the South of Second account and, pursuant to the stipulation, would continue to distribute payments to plaintiff according to the schedule contained in the stipulation. Defendant suggested to the officer of KKBNA who had ordered the transfer that a certain amount be set aside from which the scheduled payments to plaintiff could be made. The record contains no evidence from which it could be inferred that defendant

would have reason to believe this would not be done.

As there is support in the record for the trial court's determination that defendant was unaware at the time the money was transferred that KKBNA did not intend to pay plaintiff pursuant to the stipulation, that determination is therefore binding on appeal. *See Peterson v. Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978); *Halberstam v. Welch, supra* (the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance). Thus, we will not disturb the trial court's finding that defendant could have had no knowledge that, by giving the funds over to KKBNA at its direction, he was assisting it to breach a fiduciary duty to plaintiff. *See Terrydale Liquidating Trust v. Barness, supra.*

## II.

■ Plaintiff contended in the trial court that, even if defendant did not aid and abet the commission of a breach of fiduciary duty by KKBNA, he is nonetheless liable to plaintiff because he was acting as a general agent for South of Second and KKBNA. Plaintiff argues that the trial court erred in determining that defendant was not a general agent and that he engaged in no misconduct in the execution of his duties. Even if we were to assume that a general agent would otherwise be liable under the circumstances here, the facts support the conclusion of the trial court.

■ A general agent is authorized to conduct a series of transactions involving a continuity of service which does not require fresh authorization for each transaction while, in contrast, a special agent is one who is authorized to conduct a single transaction or a series of transactions not involving a continuity of service. *Stortroen v. Beneficial Finance Co.,* 736 P.2d 391 (Colo.1987).

Here, the facts as contained in the record support the determination that defendant was a special agent for the purpose of collecting the sale proceeds and damages. Specifically, the testimony indicated that defendant was not an integral part of any business conducted by South of Second or KKBNA.

He assumed control of the account in which the sale proceeds and damages were to be deposited because KKBNA did not wish to provide for the segregation of those funds from other incoming funds or to assume the responsibility of enforcing collection should payment be untimely. Testimony indicated that such collection related activity was "out of the ordinary" course of business for KKBNA. In addition, the record reveals that KKBNA was moving its business location at the time and that one of the first payments from Georgetown did not reach KKBNA timely because it was not forwarded correctly.

Defendant did no more than deposit the funds into the account, disburse funds from the account at KKBNA's direction, and sign tax returns in the name of South of Second on behalf of and at the direction of KKBNA. After the last of the sale proceeds and damages payments were received, defendant ceased any activity on behalf of South of Second or KKBNA concerning these funds. Accordingly, the trial court correctly concluded that defendant was a special, and not a general, agent of KKBNA and South of Second. *See Stortroen v. Beneficial Finance Co., supra; Manhattan Life Insurance Co. v. First National Bank,* 20 Colo.App. 529, 80 P. 467 (1905).

## III.

Plaintiff contends that the case should be remanded to the trial court for a new trial based upon newly discovered evidence of defendant's misappropriation of client funds. We disagree.

### A.

■ Although plaintiff appears to concede on appeal that no attorney/client relationship existed between plaintiff and defendant, plaintiff argues that defendant breached a duty not to distribute funds to his client, KKBNA, which he knew belonged to plaintiff. We disagree.

■ In the absence of an attorney/client relationship, or certain circumstances not present here, an attorney is not liable to his client's adversary for damages absent wilful and wanton conduct, fraud, or malice. *See Central Bank Denver v. Mehaffy, Rider, Windholz & Wilson,* 865 P.2d 862 (Colo.App. 1993); *Weigel v. Hardesty,* 37 Colo.App. 541, 549 P.2d 1335 (1976).

Importantly, here, the funds received from the sale and as damages were not deposited in defendant's trust account. And, with the signing of the stipulation, South of Second had ceased to exist except for tax purposes. All payments to plaintiff pursuant to the schedule that plaintiff had negotiated with KKBNA were current in 1985. Thus, because defendant's special agency concluded with the last payment of the sale proceeds and damages, defendant had no choice but to transfer the remaining funds to KKBNA, his remaining client, upon its request, and was not required to determine in what proportion the funds were to go to plaintiff or to KKBNA. Therefore, we agree with the trial court that plaintiff has failed to prove liability on the basis of wilful or wanton conduct, fraud, or malice.

Plaintiff argues that *Coppock v. Helfer,* 515 P.2d 488 (Colo.App.1973) (not selected for official publication) requires a different result. We do not agree. In that case, an attorney distributed life insurance proceeds to his client before the client's exclusive rights to those proceeds had been determined with the result that an heir entitled to a portion of the funds was unable to receive her portion. Here, the rights of the parties in the sale proceeds and damages had been established by stipulation and the payments to plaintiff pursuant to the stipulation were current at the time defendant's special agency for purposes of collection concluded.

### B.

■ Despite the absence of evidence of any duty owed to plaintiff by virtue of defendant's legal representation of KKBNA and South of Second, plaintiff contends that we should remand the matter to the trial court for the presentation of newly discovered evidence to refute evidence presented at trial regarding defendant's integrity. We do not agree.

In order successfully to establish a right to a new trial based upon newly discovered evidence, the proponent must show: the evidence could not have been discovered through reasonable diligence and produced at the first trial; the evidence was material to an issue in the first trial; and the evidence would likely have changed the result of the first trial. *Aspen Skiing Co. v. Peer,* 804 P.2d 166 (Colo.1991).

Although plaintiff is correct in noting that the evidence could not have been discovered by him until it became public as part of an attorney discipline procedure against defendant after the conclusion of the first trial, we do not agree that this information is material to any issue in the first trial or that it would probably have changed the outcome.

The issue at trial, under any of the theories of liability proposed by plaintiff, was whether defendant knowingly committed acts which enabled KKBNA to breach its duty to plaintiff to make payments pursuant to the stipulation. No claim was made that defendant behaved dishonestly towards his own clients or that he converted any client funds.

Because there was no attorney/client relationship between plaintiff and defendant, and because plaintiff has not established that defendant, as attorney for KKBNA and South of Second, owed him any duty of loyalty, we conclude that any evidence that defendant breached a duty of loyalty to some other client would not be relevant to the issues here and, therefore, such evidence would be unlikely to have changed the result of the first trial. *See Aspen Skiing Co. v. Peer, supra.*

Because of the manner of our resolution of these issues, we need not address plaintiff's remaining contentions.

The judgment is affirmed.

HUME and BRIGGS, JJ., concur.