947 P.2d 143

**GCM, INC., a New Mexico Corporation, Claimant–Petitioner,**

v.

**KENTUCKY CENTRAL LIFE INSURANCE COMPANY and Donald M. Stephens, Liquidator for Kentucky Central Life Insurance Company, Respondents–Respondents.**

**No. 23978.**

Supreme Court of New Mexico.

Sept. 29, 1997.

---

Messina, Madrid & Smith, P.A., Glenn R. Smith, Albuquerque, for Claimant–Petitioner.

Sutin, Thayer & Browne, Norman Thayer, Albuquerque, for Respondents–Respondents.

## OPINION

MINZNER, Justice.

1. GCM, Inc. appeals from a decision of the Court of Appeals affirming the district court's summary judgment for Kentucky Central Life Insurance Company and its liquidator, Donald M. Stephens. The Court of Appeals decided this case by memorandum opinion. *GCM, Inc. v. Kentucky Central Life Ins. Co.*, NMCA No. 16,849, slip op. (filed Oct. 1, 1996). We affirm the grant of summary judgment and the order denying GCM's motion for reconsideration.

## I.  STATEMENT OF THE FACTS

2. GCM is a joint venturer in Guadalupe Plaza Joint Venture (the Joint Venture), which is itself a limited partner in Guadalupe Plaza Limited Partnership (the Limited Partnership). Ron Brown is both a co-joint venturer in the Joint Venture and the principal of the general partner in the Limited Partnership. Kentucky Central is a lender of the Limited Partnership.

3. The Joint Venture contributed real property to the Limited Partnership as capital, retaining a priority claim in the first $1.7 million obtained through any sale or transfer of the property by the Limited Partnership. GCM owned a 50% interest in the Joint Venture and, therefore, in the priority claim.

4. The Limited Partnership, with Ron Brown acting as general partner, obtained a $5.8 million construction loan from Kentucky Central in return for a $5.8 million promissory note secured by a mortgage on the real property and the personal guarantee of Ron Brown. In the proceedings below, GCM alleged that Kentucky Central pressured the Limited Partnership to expand in such a way as to create an undue financial burden on the Limited Partnership and a resulting inability to meet its obligations under the construction loan.

5. In attempting a workout of the debt, GCM informed Kentucky Central of its interest in the real property. In the negotiations, Kentucky Central suggested that the Limited Partnership transfer the property to Kentucky Central, and in return, Kentucky Central would grant GCM an option to purchase the property. Instead, Brown, on behalf of the general partner of the Limited Partnership, deeded the property to Kentucky Central and released Kentucky Central from potential lender liability claims in exchange for a release of his personal guarantee. Neither party has asserted that the Limited Partnership has been dissolved.

## II. PROCEEDINGS BELOW

6. GCM filed this claim against Kentucky Central in the district court for intentionally causing Ron Brown to breach a fiduciary duty owed to GCM. GCM alleged that Brown's transfer of the property and release of claims constituted a breach of his fiduciary duty to GCM and the Joint Venture. GCM further alleged that Kentucky Central intentionally induced Brown to violate his duty to GCM with knowledge that GCM would be harmed. GCM requested as relief for this claim a rescission of the agreement to deed the property to Kentucky Central and an equitable lien on the real property in favor of GCM.

7. The district court granted summary judgment in favor of Kentucky Central and denied GCM's motion for reconsideration. Both the district court and the Court of Appeals found that Ron Brown did not owe a fiduciary duty to GCM directly in his dealings with Kentucky Central, and therefore, GCM could not pursue an action belonging to the Limited Partnership. The Court of Appeals suggested that a direct relationship should exist between the injured party and the tortfeasor in order to state a claim for intentionally inducing another to breach a fiduciary duty. In its motion for reconsideration, GCM attached a purported assignment of rights from the Joint Venture to GCM. In denying the motion, the district court did not refer to the assignment. The Court of Appeals found that the assignment did not properly assign the Joint Venture's claims to GCM. We granted certiorari to examine both the tort of aiding and abetting a breach of fiduciary duty in a partnership context and the denial of the motion for reconsideration.

8. GCM contends that there need not be a direct relationship between an injured party and a third party inducing the breach of fiduciary duty. We agree. Further, GCM contends that because Brown breached a duty owed to GCM at Kentucky Central's urging and with Kentucky Central's knowledge, it has sufficiently stated a claim for which relief can be granted. For the reasons that follow, we agree with the district court and the Court of Appeals that the scope of any duty Brown may have owed to GCM did not reach the dealings of the Limited Partnership with Kentucky Central. In addition, GCM argues that the Court of Appeals incorrectly interpreted the assignment. We need not address the Court of Appeals' interpretation of the assignment because we conclude that the trial judge did not abuse his discretion in denying the motion for reconsideration.

## III. STANDARD OF REVIEW

9. Under Rule 1–012(B) NMRA 1997, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 1–056...." A similar direction is contained in Rule 1–012(C) NMRA 1997, for motions for judgment on the pleadings. In its motion, Kentucky Central specifically requested "summary judgment pursuant to Rule 1–056." In addition, Kentucky Central attached exhibits to its motion and stated that summary judgment was the proper procedure "because the motion relies on materials outside the pleadings." GCM disputed this characterization and stated that Kentucky Central's motion was filed in response to the trial judge's direction to file a motion to dismiss. Nonetheless, GCM attached an affidavit to its Response Brief in support of its allegations. Finally, the district court granted "summary judgment."

10. On appeal, the Court of Appeals determined that a Rule 1–012(B)(6) standard was actually applied in the case below and reviewed the decision accordingly. *Compare Gonzales v. Allstate Ins. Co.*, 1996 NMSC 041, 122 N.M. 137, 139, 921 P.2d 944, 946 (stating that on review of a grant of summary judgment pursuant to Rule 1–056, an appellate court "must determine whether the moving party has demonstrated that there is no genuine issue of material fact and is therefore entitled to a judgment as a matter of law"), *with Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 760, 750 P.2d 118, 121 (1988) (reviewing a dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 1–012(B)(6), and stating that a court must "accept as true all facts well pleaded and ques-

tion only whether the plaintiffs might prevail under any state of facts provable under the claim"). We disagree.

11. Kentucky Central moved for summary judgment, and the district court granted the motion. Because exhibits and affidavits, matters outside the pleadings, were presented to the court and not excluded for purposes of the motion, the proper standard of review is under Rule 1–056 for summary judgment. *Peck v. Title USA Ins. Corp.*, 108 N.M. 30, 32, 766 P.2d 290, 292 (1988) (finding a motion to dismiss to be a motion for summary judgment based on the presentation to the court of matters outside the pleadings).

12. Nevertheless, the specific posture in which Kentucky Central filed its motion requires this Court, in reviewing the grant of summary judgment, to determine whether GCM has alleged sufficient facts to support a legally cognizable claim. In its reply brief on the motion for summary judgment, Kentucky Central stated, "The material facts, as alleged in GCM's claim, are admitted for purposes of the motion (only), and are not in dispute. The question is whether GCM has stated a claim, if the facts of the petition are accepted as true."

█ 13. When a party "actually admit[s], for purposes of the summary judgment motion, the veracity of the allegations in the complaint," a reviewing court should "consider the facts pleaded as undisputed and determine if a basis is present to decide the issues as a matter of law." *Matkins v. Zero Refrigerated Lines, Inc.*, 93 N.M. 511, 513, 602 P.2d 195, 197 (Ct.App.1979) (considering a motion for summary judgment submitted solely on the pleadings and without supporting affidavits). In effect, the only difference between this summary judgment proceeding and a review under Rule 1–012(B)(6) is the availability of GCM's affidavit in the determination of the legal sufficiency of GCM's claim. Thus, this Court will accept the facts as alleged by GCM in its complaint and in its affidavit for purposes of this motion and determine whether, as a matter of law, Kentucky Central is entitled to judgment.

## IV. LEGAL SUFFICIENCY OF THE CLAIM

### A. *Aiding and Abetting a Breach of Fiduciary Duty*

█ 14. While we believe New Mexico has implicitly endorsed tort liability for intentionally causing a fiduciary to breach his or her duties, we now explicitly recognize this form of tort liability. We note that "in some states, it is still unclear whether there is aiding and abetting tort liability of the kind set forth in [Section] 876(b) of the Restatement [ (Second) of Torts (1979) ]." *Central Bank v. First Interstate Bank*, 511 U.S. 164, 181–82, 114 S.Ct. 1439, 1450, 128 L.Ed.2d 119 (1994) (holding that Section 10(b) of the Securities Exchange Act of 1934 does not provide a private civil action for aiding and abetting, relying on the text of the statute and· congressional intent). Nonetheless, New Mexico recognizes tort liability for aiding and abetting another's tortious conduct.

█ 15. This Court has cited with approval the notion that "a person is under a duty to refrain from intentionally causing another to violate a duty to a third." *Wolf & Klar Cos. v. Garner*, 101 N.M. 116, 118, 679 P.2d 258, 260 (1984) (quoting Restatement (Second) of Agency § 312 cmt. a (1958)) (referring to Restatement (Second) of Torts § 871 (1979)). "Where one participates with or aids or abets an agent in an act which perpetrates a fraud upon the principal, he is equally liable with the agent to the principal for any damages suffered." *Wolf & Klar*, 101 N.M. at 118, 679 P.2d at 260 (allowing a claim for constructive fraud). In addition, New Mexico has adopted Restatement (Second) of Torts Section 876, which recognizes the liability of third persons for the tort of another if the person "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Rael v. Cadena*, 93 N.M. 684, 684–85, 604 P.2d 822, 822–23 (Ct.App.1979) (allowing an action for battery against one who yelled encouragement to the primary tortfeasor); *accord Halberstam v. Welch*, 705 F.2d 472, 481 (D.C.Cir.1983) (discussing aiding and abetting liability in tort and citing *Rael* as an

example of its application); *Alleco v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 665 A.2d 1038, 1049–50 (1995). Thus, it is clear that tort liability for aiding and abetting a tortious action exists in New Mexico. However, New Mexico courts have not directly addressed the question of whether a person can be liable to an injured party for intentionally causing another to breach a fiduciary duty.

16. The Restatement has taken the position that liability should attach for intentionally causing another to breach a fiduciary duty. Restatement (Second) of Torts § 874 cmt. c (referencing Section 876). In addition, courts in other states have allowed such a cause of action. *See, e.g., Holmes v. Young*, 885 P.2d 305, 308–09 (Colo.Ct.App.1994) (applying aiding and abetting a breach of fiduciary duty to a partnership situation and citing *Rael*); *Morris v. Consolidation Coal Co.*, 191 W.Va. 426, 446 S.E.2d 648, 657 (1994) (recognizing the liability of a third party to a patient under Section 874, comment c, for inducing the patient's physician "to breach his fiduciary relationship by disclosing confidential information"). Finally, this Court has demonstrated a willingness to recognize new causes of action in tort based on intentional wrongful conduct. *Coleman v. Eddy Potash, Inc.*, 1995 NMSC 070, 120 N.M. 645, 649, 905 P.2d 185, 189 (recognizing intentional spoliation of evidence); *Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990) (recognizing prima facie tort). Because the duty involved in a fiduciary relationship cannot be distinguished from other tort duties in this context, New Mexico's recognition of aiding and abetting liability logically extends to a breach of fiduciary duty.

17. Therefore, we today hold that New Mexico recognizes tort liability for the aiding and abetting of a breach of fiduciary duty. In order to state such a claim, a plaintiff must allege and prove the following: (1) a fiduciary of the plaintiff breached a duty owed to the plaintiff; (2) the defendant knew of such a duty; (3) the defendant intentionally provided substantial assistance or encouragement to the fiduciary to commit an act which the defendant knew to be a breach of

duty; and (4) damages to the plaintiff were caused thereby. *Cf. Holmes*, 885 P.2d at 309.

18. An injured party need not have a direct relationship with the third party against whom liability is sought as an aider and abettor. *See Rael*, 93 N.M. at 684, 604 P.2d at 822 (stating that liability "extends to *any person who by any means* aids or encourages the act") (emphasis added); *cf. Wilschinsky v. Medina*, 108 N.M. 511, 515, 775 P.2d 713, 717 (1989) (recognizing a duty on the part of a physician to an unrelated third party injured by the physician's patient); *Holmes*, 885 P.2d at 309 ("The gravamen of a claim of aiding and abetting a breach of fiduciary duty is the defendant's 'knowing participation' in the fiduciary's breach of trust. . . ."). Rather, the injured party must have a fiduciary relationship with the principal tortfeasor, and the third party must occupy the role of an accomplice in relation to the principal tortfeasor. Thus, tort liability for aiding and abetting is consistent with one of the principal goals of tort law, the deterrence of wrongful actions that result in harm. *See Folz v. State*, 110 N.M. 457, 467, 797 P.2d 246, 256 (1990) ("Under our fault system, there is a policy of deterrence associated with responsibility for compensatory damages."). We now address whether GCM has alleged sufficient facts to support the first element of aiding and abetting a breach of fiduciary duty.

## B. *Fiduciary Duties Between Partners*

19. In order to allege sufficient facts to support this cause of action, GCM must demonstrate both the existence of a fiduciary relationship between GCM and Brown and Brown's breach of a fiduciary duty owed to GCM. In New Mexico, a partner cannot assert claims belonging to the partnership. "[A] partnership is empowered to sue or to be sued in the name of the partnership, and a cause of action accruing to the partnership, for damages to partnership property or interests, belongs to the partnership rather than to individual partners." *First Nat'l Bank v. Sanchez*, 112 N.M. 317, 325, 815 P.2d 613, 621 (1991) (citations omitted). While it is clear that Brown owed a fiduciary duty to the Limited Partnership, NMSA 1978, § 54–

1–21(A) (1947, effective until July 1, 1997),[1] the only real party in interest to properly assert such a claim would be the partnership entity. Only the injured party may assert a claim for aiding and abetting or intentionally causing another to breach a fiduciary duty. Rule 1–017(A) NMRA 1997 (stating that "[e]very action shall be prosecuted in the name of the real party in interest"). Thus, under the applicable law, only the Limited Partnership could sue for damages caused by intentionally inducing a breach of a partner's fiduciary duty *owed to the partnership.* As a result, in order to assert this action in its individual capacity, GCM must demonstrate a fiduciary duty on the part of Brown owed to GCM separately from Brown's duty to the Limited Partnership.

20. An action for breach of fiduciary duty by a partner can be characterized as both an individual and a partnership claim. 4 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership* § 15.04(h), at 15:35–36 (1996). The distinction between the two is based on "whether the duty is deemed owed to the partners (as individuals) or to the partnership." *Id.* (footnote omitted). While there is a statutory fiduciary duty imposed on partners with respect to the partnership, Section 54–1–21(A), the legislature has only recently included an explicit concurrent duty with respect to other partners. *See* NMSA 1978, § 54–1A–404 (effective July 1, 1997) (modifying the earlier law and defining the scope of fiduciary duties a partner owes to the partnership *and* to the other partners); § 54–1A–405(b)(2)(i) (effective July 1, 1997) (permitting an action by a partner against another partner for breach of fiduciary duty, with or without an accounting and for either legal or equitable relief). However, the controlling statute does not appear to preclude such an obligation if it arises under common law principles. *See* NMSA 1978, § 54–1–5 (1947) ("In any case not provided for in this act the rules of law and equity, including the law merchant, shall govern."). In fact, the controlling statute implicitly recognizes such a duty by providing to individual partners a right to a formal accounting based on Section 54–1–21 or "whenever other circumstances render it just and reasonable." NMSA 1978, § 54–1–22 (1947).

■■■ 21. In addition, this Court has recognized a fiduciary duty existing between partners in a partnership. "It is true that partners occupy a fiduciary duty towards one another." *Citizens Bank v. Williams,* 96 N.M. 373, 375, 630 P.2d 1228, 1230 (1981); *see also Covalt v. High,* 100 N.M. 700, 702, 675 P.2d 999, 1001 (Ct.App.1983) ("The status resulting from the formation of a partnership creates a fiduciary relationship between partners."). Further, this Court has recognized the availability of damages for fraud by a partner against another partner in an equitable action for an accounting. *Levy v. Disharoon,* 106 N.M. 699, 703–04, 749 P.2d 84, 88–89 (1988) (distinguishing actions at law from an equitable action for an accounting and stating that "[w]hen there is a partnership accounting and defendant is charged with fraud and misconduct, defendant is answerable in that proceeding for all damages sustained by plaintiff on account of defendant's breach of duty to the firm"); *see also Bassett v. Bassett,* 110 N.M. 559, 564–65, 798 P.2d 160, 165–66 (1990) (allowing punitive damages and attorney fees against one partner for the breach of fiduciary duty "owed another partner" in an action based on constructive fraud); *cf. Turpin v. Smedinghoff,* 1994 NMSC 052, 117 N.M. 598, 600–01, 874 P.2d 1262, 1264–65 (limiting the holding of *Bassett* with respect to attorney fees to a breach of fiduciary duty resulting from constructive fraud that causes actual harm or "when one partner sues in order to maintain the common fund"). "It follows from the general requirement of good faith in partnership dealings that a partner is not allowed to gain any advantage over a co-partner by fraud, misrepresentation or concealment, and for any advantage so obtained [the partner] must account to the co-partner." *Levy v. Disharoon,* 106 N.M. at 704, 749 P.2d at 89.

---

**1.** An amended version of the Uniform Partnership Act became effective on July 1, 1997, and replaces the previous act in its entirety. NMSA 1978, §§ 54–1A–101 to –1005 (effective July 1, 1997). Nonetheless, the prior law governs this action.

22. Under the applicable statute, it is unclear whether a partner may obtain redress from a co-partner for a breach of fiduciary duty owed to the partner by the co-partner *before* dissolution. *See generally Nussbaum v. Kennedy,* 267 Ill.App.3d 325, 204 Ill.Dec. 689, 693, 642 N.E.2d 151, 155 (1994); *Dunn v. Zimmerman,* 69 Ohio St.3d 304, 631 N.E.2d 1040, 1043-44 (1994). While the Limited Partnership has not been dissolved, this case does not present a dispute between partners in an existing partnership. Rather, this is an action against a third party non-partner. For purposes of this case, we will assume that an aider and abettor may be liable in tort independent of a judicial proceeding against the principal tortfeasor. *Cf.* NMSA 1978, § 30-1-13 (1972) (discussing the criminal liability of an accessory despite any failure to prosecute or convict the principal of the crime).

23. The tort of aiding and abetting will apply in a partnership context if: (1) a partner owes a fiduciary duty to the partnership or partner bringing the action; (2) the partner breaches that duty; (3) the third-party defendant intentionally assists or encourages in a substantial manner the partner's acts constituting the breach with knowledge that these acts would be a breach of duty owed to the plaintiff; and (4) damages to the plaintiff result. *See Holmes,* 885 P.2d at 309 ("We perceive no reason why the tort of aiding and abetting a breach of fiduciary duty should not be recognized in a limited partnership situation."). This principle ought to apply equally to joint ventures. *Cf. Hansler v. Bass,* 106 N.M. 382, 387, 743 P.2d 1031, 1036 (Ct.App.1987) (finding the definition of partnership relevant in determining the existence of a joint venture, and stating that a joint venture is a "partnership for a single transaction"). However, the scope of a tort duty is a matter of law. *Calkins v. Cox Estates,* 110 N.M. 59, 62, 792 P.2d 36, 39 (1990) ("The court must determine *as a matter of law* whether a particular defendant owes a duty to a particular plaintiff."). Whether a partner owes a fiduciary duty to another partner or the partnership, the scope of that duty is limited to partnership dealings. *Cf.* § 54-1-21(A) (limiting the scope of a partner's fiduciary duty to the partnership

to "any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property"); *Kueffer v. Kueffer,* 110 N.M. 10, 13, 791 P.2d 461, 464 (1990) ("A fiduciary is obliged 'to act primarily for another's benefit *in matters connected with such undertaking.*'") (quoting Black's Law Dictionary 563 (5th ed. 1979)) (emphasis added). Finally, in order to constitute an individual claim, as opposed to a partnership claim, the breach must cause an injury separate and distinct from an injury suffered by the partnership. *Litman v. Prudential–Bache Properties, Inc.,* 611 A.2d 12, 15 (Del.Ch.1992). Thus, a partner's individual action for aiding and abetting against a third party must be founded on a co-partner's failure to act primarily for the benefit of the partner bringing the action, arising out of matters connected with the partnership, and causing a direct injury to the partner rather than an indirect injury through the partnership.

### C. *Application of Aiding and Abetting to the Facts*

24. Our cases suggest that Brown, as the principal of the general partner in the Limited Partnership, owed a fiduciary duty to the Joint Venture, as a limited partner. Additionally, we assume that Brown, as a joint venturer in the Joint Venture, owed a fiduciary duty to GCM, as a co-joint venturer in the Joint Venture. As a result, the aiding and abetting of a breach of fiduciary duty by Brown is potentially a claim upon which relief can be granted both for Brown's conduct on behalf of the Limited Partnership *and,* *independently,* for Brown's conduct on behalf of the Joint Venture. Nevertheless, this cause of action must be prosecuted by the real party in interest with respect to the breach of duty. Rule 1-017(A).

25. While Brown owed a duty to GCM as a joint venturer in connection with Joint Venture dealings, he did not owe a duty to GCM in the dealings of the Limited Partnership. Rather, in his dealings on behalf of the Limited Partnership, Brown owed a fiduciary duty to the Limited Partnership *and* to his other partners, including the Joint Venture.

26. The nature of the relief requested and the breach of duty alleged are important indicators of the specific duty at issue. *Cf. Litman*, 611 A.2d at 15 (stating that "in determining whether a claim is derivative or direct in nature, [one] must look to the nature of the wrongs alleged in the body of plaintiffs' complaint, not plaintiffs' characterization or stated intention"). In its complaint, GCM alleged that Brown breached a fiduciary duty when he acquiesced "to Kentucky Central's pressure to deed the Real Property to Kentucky Central and to purportedly release lender liability claims against Kentucky Central ..." without providing any consideration to GCM.

27. The real property and lender liability claims were owned solely by the Limited Partnership. As a result, with respect to their disposition and the distribution of profits, Brown owed a fiduciary duty to the Limited Partnership and to the Joint Venture, as a limited partner; however, Brown did not owe a fiduciary duty to GCM in its individual capacity as a joint venturer. Brown only owed a fiduciary duty to GCM, as a joint venturer, in the dealings of the entity known as the Joint Venture. GCM did not complain of improper actions taken by Brown in the dealings of the entity known as the Joint Venture. A claim for aiding and abetting a breach of fiduciary duty requires an underlying breach of a fiduciary duty owed to the plaintiff by the principal tortfeasor. GCM failed to allege a breach of fiduciary duty owed to GCM by Brown. Thus, GCM, as a joint venturer, is not the real party in interest to pursue an action for breach of a fiduciary duty by Brown in relation to the dealings of the entity known as the Limited Partnership or, consequently, for aiding and abetting that breach. *See Daniels Ins., Inc. v. Daon Corp.*, 106 N.M. 328, 331, 742 P.2d 540, 543 (Ct.App.1987) ("A real party in interest is one who is the owner of the right being enforced and is in a position to discharge defendant from the asserted liability."); Rule 1–017(A) (requiring that the real party in interest initiate the action). Because GCM failed to allege sufficient facts to support the first element of aiding and abetting, we need not address the adequacy of GCM's allegations regarding Kentucky Central's knowledge of duty and substantial encouragement or assistance of a breach of duty. We therefore conclude that summary judgment in favor of Kentucky Central was proper.

## V. MOTION FOR RECONSIDERATION AND THE ASSIGNMENT

28. Nevertheless, this Court must also evaluate the effect of the purported assignment to GCM of the Joint Venture's chose in action. GCM attached the assignment to a motion for reconsideration. A district court has broad discretion in ruling upon a motion for reconsideration and will only be reversed for an abuse of that discretion. *See Sun Country Sav. Bank v. McDowell*, 108 N.M. 528, 532, 775 P.2d 730, 734 (1989) (discussing the standard of review for a motion under Rule 1–060(B) NMRA 1997). Under Rule 1–017(A), a district court also has discretion to allow a reasonable time for ratification, joinder, or substitution of parties if an honest mistake resulted in the prosecution of an action by a party other than the real party in interest. As a result, this Court will review the denial of GCM's motion for reconsideration based on the assignment under an abuse of discretion standard. An abuse of discretion "may be found only where the judge has acted arbitrarily or unreasonably under the particular circumstances." *United Salt Corp. v. McKee*, 96 N.M. 65, 68, 628 P.2d 310, 313 (1981). Judge Hall stated that there were "no good grounds to reconsider the decision previously made." On the record before us, we are unable to conclude that the judge's decision was either arbitrary or unreasonable. Therefore, we affirm the denial of the motion for reconsideration.

### A. Potential Legal Effect of the Assignment

29. The purported assignment may be relevant in demonstrating a ratification by the Joint Venture if, as we assumed above, a partner may bring an action against a third party for the aiding and abetting of another partner's breach of fiduciary duty prior to dissolution. GCM alleged that Brown breached his fiduciary duty to the Limited

Partnership and to the Joint Venture as a limited partner. In addition, GCM alleged that Kentucky Central knew of the fiduciary duty and intentionally induced Brown to breach that duty to the Joint Venture's detriment. GCM also has alleged a priority claim of the Joint Venture to the proceeds of a sale of the property by the Limited Partnership. Further, GCM has alleged that the Joint Venture is the only partner in the Limited Partnership to hold a priority claim on the property, making it a unique interest within the partnership. Finally, the gist of the complaint concerns a breach of fiduciary duty in connection with Brown's actions on behalf of the Limited Partnership and concerning the property over which the Joint Venture had a priority claim within the partnership. Thus, Brown's actions may have been within the scope of his fiduciary duty not only to the Limited Partnership but also to the Joint Venture, as a limited partner.[2] Assuming the Joint Venture has a cause of action as a limited partner, the Joint Venture would be the real party in interest to assert an action based on the Joint Venture's priority claim. As a result, the assignment would be relevant in determining whether GCM may pursue this action on behalf of the Joint Venture.

■■■■ 30. In order to assign the right to sue belonging to a partnership, all partners must agree to the assignment. *Daniels Ins.*, 106 N.M. at 332, 742 P.2d at 544 ("Where one partner makes an assignment of partnership property without the consent of the other partners, the assignment is void."). We assume that the same principle applies to an assignment by a joint venture. In this case, the assignment is signed by Ron Brown, General Partner of Guadalupe Plaza Joint Venture, but it is not signed by GCM or Elmer Sproul, the other joint venturers. However, "[a]n invalid or ineffective assignment ... may be validated by ratification." *Daniels Ins.*, 106 N.M. at 332, 742 P.2d at 544. Further, the issue of ratification is a question of fact. *Daniels Ins.*, 106 N.M. at 333, 742 P.2d at 545. This Court, then, must determine whether the issue of ratification was properly raised in the district court to determine whether it was an abuse of discretion to deny reconsideration.

**B.** *Ratification in New Mexico*

31. New Mexico's Rule 1–017(A) differs from its counterpart in the federal rules by granting discretion to the trial court in whether to allow ratification. *Compare* Rule 1–017(A) ("Where it appears that an action, by reason of honest mistake, is not prosecuted in the name of the real party in interest, the court *may allow a reasonable time* for ratification of commencement of the action by, or joinder or substitution of, the real party in interest....") (emphasis added), *with* Fed.R.Civ.P. 17(a) ("*No action shall be dismissed* on the ground that it is not prosecuted in the name of the real party in interest *until a reasonable time has been allowed* after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest....") (emphasis added). This sentence in the federal rule was added in 1966 in order to "avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1555, at 411–12 (1990). This purpose reflects the general goal of the federal rules to reduce the burden on parties at the pleading stage and to alleviate the risk of dismissal with prejudice based on an initial innocent miscalculation. *Id.* § 1555, at 412–14. While the federal rule is mandatory, courts have inferred a prerequisite of "understandable mistake" and a lack of prejudice to the defendant. *Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1477 (11th Cir. 1991). In addition, the purpose of this portion of Rule 17 must be viewed in context with the purpose of requiring prosecution by the real party in interest: to ensure res judicata effect of the judgment and to ensure that the interests involved otherwise are properly protected. Fed.R.Civ.P. 17(a) advisory committee's note (1966 Amendment).

---

**2.** Because of our disposition regarding the assignment, we need not decide whether the priority claim would suffice as an interest distinct from the Limited Partnership allowing an individual claim by the Joint Venture.

"[R]atification has *res judicata* effect on ratifying parties and allows them an opportunity to protect their interests." *ICON Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 477 (3d Cir.1987).

32. The manner in which Rule 1–017(A) differs from the mandatory nature of the federal rule implies a broader discretion over such matters in New Mexico trial courts. Nonetheless, New Mexico's Rules of Civil Procedure have a similar overall goal of making pleading less burdensome. *See* Rule 1–008(A) NMRA 1997 (requiring notice pleading); *Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct.App.1978) ("New Mexico adheres to the broad purposes of the Rules of Civil Procedure and construes the rules liberally, particularly as they apply to pleading."). We also have a similar specific goal in requiring prosecution by the real party in interest. *See Daniels Ins.,* 106 N.M. at 331, 742 P.2d at 543; *cf. United Nuclear Corp. v. Fort,* 102 N.M. 756, 761, 700 P.2d 1005, 1010 (Ct.App.1985) (stating that the rule disfavoring the splitting of causes of action "is grounded upon public policy designed to avoid a multiplicity of suits"). Thus, New Mexico cases are consistent with the federal rule and federal cases in construing the policies served by providing an opportunity for ratification. *See Chavez v. Regents of Univ. of N.M.,* 103 N.M. 606, 610, 711 P.2d 883, 887 (1985) (discussing Rule 1–017(A) and "the principle that in the interests of justice and to promote the adjudication of a case upon its merits, amendments should be freely granted"); *cf.* Rule 1–021 NMRA 1997 ("*Misjoinder* of parties is not ground for dismissal of an action.") (emphasis added). While decisions under Rule 1–017(A) typically will rest in the sound discretion of the trial court, the policies underlying the rule support a liberal interpretation in favor of the movant.

## C. *Application of Rule 1–017(A) to the Facts*

33. Under Rule 1–017(A), there is no clear direction as to the proper procedure for raising the issue of ratification. Neither the parties nor the district court discussed this rule either in the summary judgment proceeding or in the motion for reconsideration. In addition, the document GCM attached to its motion was labeled an "assignment" rather than a "ratification." However, "[i]f the trial court does consider ... new material [on reconsideration] and still grants summary judgment, 'the appellate court may review all of the materials *de novo.*'" *In re Estate of Keeney,* 1995 NMCA 181, 121 N.M. 58, 61, 908 P.2d 751, 754 (quoting *Fields v. City of S. Houston, Texas,* 922 F.2d 1183, 1188 (5th Cir.1991)). We are unable to determine whether, in ruling on the motion for reconsideration, the district court considered the assignment or refused to consider it. Therefore, we will not review the assignment de novo.

34. Without further information regarding the basis of the district court's ruling, we cannot conclude that the district court abused its discretion in denying GCM's motion for reconsideration. The district court might have concluded that the assignment was invalid on its face as a ratification. Neither the assignment nor the motion to reconsider suggested the possible ratification by Elmer Sproul, a co-joint venturer, to a degree sufficient to create a factual question as to his assent. *Cf. ICON Group,* 829 F.2d at 478 (requiring the ratification of all parties with an interest in the action). Alternatively, the district court might have concluded that GCM's assertion of an individual claim was not based on an honest mistake. In fact, because GCM sought an equitable lien on the property of the Limited Partnership, the district court reasonably may have concluded that GCM understood that either the Joint Venture or the Limited Partnership was the real party in interest in this matter. GCM has not demonstrated that such conclusions would be unreasonable or arbitrary. Finally, it is possible that the district court understood the motion as simply a request to reconsider the propriety of the grant of summary judgment. While Rule 1–007(B)(1) NMRA 1997 (requiring particularity of grounds in motions), does not require citation to a specific rule supporting the motion, *see Phelps Dodge Corp. v. Guerra,* 92 N.M. 47, 50–51, 582 P.2d 819, 822–23 (1978); *Century Bank v. Hymans,* 1995 NMCA 146, 120 N.M. 684, 689, 905 P.2d 722, 727, the failure to

clearly articulate the legal basis for a motion is relevant in reviewing a trial court's exercise of discretion. By not citing the rule, GCM may have failed to make clear to the district court that its motion raised a distinct, and yet unaddressed, issue. GCM has failed to demonstrate that the district court did not rely on any of the above reasonable grounds and, instead, relied on an unreasonable or arbitrary basis of fact or law.

35. On this record, GCM has not demonstrated that the trial judge's decision was either arbitrary or unreasonable. We conclude that the trial judge did not abuse his discretion.

## VI. CONCLUSION

36. New Mexico recognizes the tort of aiding and abetting a fiduciary duty. However, this cause of action requires an underlying breach of a fiduciary duty owed to the plaintiff. The scope of a partner's fiduciary duty is limited to partnership matters. GCM was not a partner in the Limited Partnership but asserted a claim based solely on the disposition of property belonging to the Limited Partnership. As a result, GCM was not the proper party to assert a cause of action for aiding and abetting the breach of a fiduciary duty arising out of the affairs of the Limited Partnership. Further, GCM's complaint did not rely on actions taken on behalf of the Joint Venture. As a result, GCM did not allege sufficient facts supporting a claim for aiding and abetting a breach of fiduciary duty arising out of the affairs of the Joint Venture. Therefore, we affirm the district court's grant of summary judgment in favor of Kentucky Central. Because GCM failed to demonstrate an abuse of discretion by the trial judge, we also affirm the denial of the motion for reconsideration.

37. **IT IS SO ORDERED.**

FRANCHINI, C.J., and SERNA and McKINNON, JJ., concur.

