This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CARDREW, LLC, a limited liability company,**

     Plaintiff-Appellee,

v.                                     **NO. 28,745**

**TOMMY JONES and CAROL ANTOINE,**

     Defendant-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

J. Robert Beauvais, P.A.
J. Robert Beauvais
Ruidoso, NM

for Appellee

Richard A. Hawthorne, P.A.
Richard A. Hawthorne
Ruidoso, NM

for Appellants

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Plaintiff, Cardrew LLC, filed suit against Defendants Tommy Jones and his girlfriend, Carol Antoine, requesting that the district court set aside Antoine's redemption of the property in question. Cardrew asserts the district court erred (1) in determining that the foreclosure sale on the property extinguished the junior mortgage, (2) in determining that Jones's assignment of his right of redemption was not fraudulent, and (3) in denying his motion to reconsider. We affirm.

**BACKGROUND**

When Jones and Kathryn Dewbre were married, they took out a mortgage with Suburban Mortgage on their house (Lot 14). The couple also owned the lot next door (Lot 15). Lot 15 was not subject to the mortgage with Suburban Mortgage. Jones and Dewbre later divorced, and as part of the divorce, Jones kept Lots 14 and 15 in exchange for paying Dewbre $40,000. To secure the debt, Jones gave Dewbre a mortgage on both Lots 14 and 15.

Jones defaulted on both the mortgage with Suburban Mortgage and the mortgage with Dewbre. In 1998, Suburban Mortgage filed a foreclosure action against Jones and Dewbre on Lot 14. Dewbre successfully cross-claimed against Jones and was awarded a monetary judgment against him for $5,000, the amount still owed on her mortgage. A foreclosure decree was entered in favor of Suburban Mortgage, extinguishing the mortgage given to Dewbre as it related to Lot 14.

Cardrew was the successful bidder in the February 16, 2000, foreclosure sale, paying $43,000 for Lot 14. On March 9, 2000, after the foreclosure sale, Dewbre assigned her mortgage on Lots 14 and 15 to Cardrew.

Jones assigned his right of redemption on the Suburban Mortgage to Antoine in May 2000. At that time, Jones and Antoine did not know that Dewbre had assigned her mortgage to Cardrew. Antoine secured her own mortgage and bought back Lot 14 under her right of redemption. Antoine paid the full redemption amount of $44,013.08, to Cardrew, which included interest. Cardrew filed this lawsuit against Jones, Antoine, Dewbre, and other defendants in October 2001. As part of a settlement agreement reached in January 2004, Dewbre transferred to Cardrew her $5,000 monetary judgment against Jones.

In this case, Cardrew asserted that the redemption for Lot 14 should be set aside because Jones's assignment of his right of redemption to Antoine was a fraudulent transfer in violation of the Uniform Fraudulent Transfer Act (UFTA), NMSA 1978, §§ 56-10-14 to -25 (1989). The district court ruled that the assignment to Antoine was not fraudulent, that Cardrew was entitled to a monetary judgment in the amount of $5,258.70 plus interest, and that Cardrew was entitled to a decree of foreclosure on said monetary judgment against Lot 15. Cardrew appeals from the district court's order.

## DISCUSSION

**Redemption and Assignment of Mortgage**

Cardrew relies on *Turner v. Les File Drywall, Inc.*, 117 N.M. 7, 868 P.2d 652 (1994), to support what appears to be its argument that "[o]nce the foreclosure was set aside, the Jones['] mortgage assigned to Cardrew was revived[,]" thereby providing it with a legal interest in Lot 14. In *Turner*, the Supreme Court held that a "mortgagor's assignee takes property redeemed after foreclosure free of all prior junior judgment liens not his own [since] the property of one man cannot be subjected to the payment of the debts of another." *Id.* at 9, 868 P.2d at 654 (internal quotation marks and citation omitted). Under this holding, the junior mortgage assigned to Cardrew would not survive since Jones' assignee redeemed the property. The Court in *Turner*, however, also noted that a right of redemption is subject to the UFTA. *Id.* Cardrew argues that Jones' transfer to Antoine violated the UFTA, thereby causing the junior mortgage to be revived. Therefore, we must determine whether Jones' transfer of his right of redemption was fraudulent under the UFTA before we can determine whether Cardrew retained any interest in Lot 14 as the holder of the junior mortgage.

**UFTA Claim**

Cardrew's argument requires us to review whether the district court erred in

4

finding that it did not prove by clear and convincing evidence that Jones fraudulently transferred his right of redemption to Antoine. *See Ellen Equip. Corp. v. C.V. Consultants & Assocs., Inc.*, 2008-NMCA-057, ¶ 1, 144 N.M. 55, 183 P.3d 940. A fraudulent transfer under Section 56-10-18(A) of the UFTA is one where a debtor transfers an asset:

> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Pursuant to Section 56-10-18(A)(1), the district court found that Cardrew "failed to offer sufficient proof that Jones' assignment of his right of redemption was made with the intent to hinder, delay, or defraud [Cardrew]." We review the district court's findings of fact for substantial evidence. *Ellen Equip.*, 2008-NMCA-057, ¶ 8. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). We consider the facts in the light most favorable to the district court's decision, resolving all conflicts and indulging all inferences to support the court's decision. *Id.*

Section 56-10-18(B) lists eleven factors or badges of fraud that a district court

5

may consider when determining whether a party had actual intent under Section 56-10-18(A)(1). Cardrew lists five of the factors that he argues were present in this case: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (4) the transfer was of substantially all of the debtor's assets; and (5) the value of the consideration received by the debtor was not reasonably equivalent to the value of the transferred asset. The district court found that Cardrew did not present evidence of the badges of fraud, and our review of the record confirms the district court's finding.

There was no evidence that Jones was in possession or control of Lot 14 after the redemption. Antoine obtained title to Lot 14, and Jones was allowed to live there with her permission. There is no evidence that Jones was threatened with suit prior to transferring his right of redemption to Antoine or that the transfer was substantially all of the Jones' assets. Jones still owned Lot 15 after the foreclosure sale, and we do not know if Jones had other assets. Finally, there was no evidence presented regarding the value of the right of redemption for Lot 14. The burden was on Cardrew to establish the value of the right of redemption by clear and convincing evidence. The district court erred in speculating about the value of Jones' right of redemption based upon the alleged market value of Lot 14.

Although not listed as one of the proven badges of fraud, Cardrew also argues, in a different page of its brief, that the district court erred in determining that Jones was not insolvent. *See* Section 56-10-18(B)(9) (listing insolvency as a badge of fraud). Cardrew contends that Jones was insolvent based on the facts that Jones was in default on his mortgages for Lots 14 and 15 and that he had not been working full time for several years. This evidence alone does not prove insolvency. There was no complete evidence of Jones' other debts and assets, except it was established that he still owned other property.

Finally, we look at the remaining badge of fraud—whether the transfer was to an insider. It is not clear whether or not Antoine was an insider under the statute since she is not a relative or business partner of Jones. However, even if we assume without deciding that she was an insider as a result of her personal relationship with Jones, our holding would not change. The badges of fraud are only potential indicators of fraud that the district court may but is not required to consider. *Ellen Equip.*, 2008-NMCA-057, ¶ 9. As explained in *Ellen Equipment*, "[t]he badges of fraud . . . are designed to assist the [district] court in determining the actual intent of the debtor, not to limit the scope of the inquiry." *Id.* ¶ 12. Cardrew failed to present uncontradicted evidence to support even one of the other badges of fraud.

The evidence in this case supports the determination that Jones and Antoine did

7

not intend to defraud Cardrew. Each submitted an affidavit stating that they did not know that Cardrew was assigned the junior mortgage from Dewbre at the time the right of redemption was transferred. The junior mortgage was still valid and secured against Lot 15. We conclude that the evidence was sufficient to support the district court's finding that Cardrew failed to prove by clear and convincing evidence that Jones and Antoine violated the UFTA under Section 56-10-18(A)(1).

We now turn to Cardrew's claim under Section 56-10-18(A)(2). Section 56-10-18(A)(2) required Cardrew to prove that Jones did not receive a reasonable value for the right of redemption, *and* either (1) that Jones was engaged in a transaction for which his remaining assets were unreasonably small compared to the transaction, or (2) that Jones was about to incur debts that were beyond his ability to pay. Cardrew fails to identify facts in the record to establish the value of the right of redemption or to support its position that Jones was going to incur debt beyond his ability to pay. In its brief, Cardrew only states that the district court erred in not concluding that "Jones should have reasonably believed that he would incur debt beyond his ability to pay." We will not review Cardrew's general assertions unless they are supported by authority and citations to the record. *See* Rule 12-213(A) NMRA; *Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990); *see also Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (filed 2008) ("The mere

assertions and arguments of counsel are not evidence."). Without evidence to support Cardrew's argument, we cannot determine that the district court erred when it concluded that Jones did not violate the UFTA under Section 56-10-18(A)(2).

We agree with the district court. Cardrew has failed to prove Jones fraudulently transferred his right of redemption to Antoine. As a result, Dewbre's mortgage against Lot 14 was extinguished and did not survive the foreclosure sale. Dewbre and her assignee, Cardrew, retained no legal interest in Lot 14 that could be asserted against Antoine after the foreclosure was final.

**Motion to Reconsider**

Although it is not clear from the manner in which it presented the issue, Cardrew filed two motions to reconsider. The first was a motion to reconsider the court's order setting aside the stipulated agreement for judgment. The second was a motion to reconsider the court's final order. In its brief, Cardrew only argues that the court erred in denying the first motion to set aside the parties' stipulation. We will only address the motion for reconsideration raised by Cardrew in its brief. We review the court's decision for an abuse of discretion. *GCM, Inc. v. Ky. Cent. Life Ins. Co.*, 1997-NMSC-052, ¶ 28, 124 N.M. 186, 947 P.2d 143 ("A district court has broad discretion in ruling upon a motion for reconsideration and will only be reversed for an abuse of that discretion."). An abuse of discretion results when a judge acts

9

arbitrarily or capriciously under the circumstances. *Id.*

Cardrew argues that the district court erred in denying its motion for reconsideration because the district court had previously erred in setting aside the parties' stipulated agreement made in open court. We disagree. As Cardrew acknowledges, courts may set aside a stipulated agreement when there has been a mistake of fact, the mistake is material to the case, and the mistake was not avoidable with due diligence. *See Pena v. Westland Dev. Co.*, 107 N.M. 560, 563, 761 P.2d 438, 441 (Ct. App. 1988); *Marrujo v. Chavez*, 77 N.M. 595, 600, 426 P.2d 199, 202 (1967). A material mistake of fact existed when Jones and Antoine made their alleged agreement with Cardrew.

Cardrew amended its original complaint three times. In the third amended complaint, it alleged for the first time that Jones' assignment of his right of redemption to Antoine was fraudulent. Cardrew failed to serve either Jones or Antoine with the third amended complaint. At the hearing in April 2005, when the alleged agreement was discussed, Jones and Antoine, along with the court, understood that the hearing concerned the merits of the second amended complaint. In addition, Jones and Antoine were not represented by counsel at the hearing. Given the circumstances, Cardrew has failed to demonstrate that the court's decision to set aside the stipulated agreement based upon the undisclosed third amended complaint was in

error. In light of the district court's discretion and the misunderstanding regarding the multiple amended complaints at the time the stipulated agreement was entered in open court, we cannot conclude that the district court erred in denying Cardrew's first motion for reconsideration.

**CONCLUSION**

We affirm the district court for the reasons stated herein.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

11